## PERRYMAN v. SHARP et al.
## REES v. PERRYMAN et al.

No. 8261—Opinion Filed Sept. 10, 1918.

Rehearing Denied Dec. 11, 1918.

(176 Pac. 526.)

(Syllabus.)

**1. Indians—Allotment—Validity of Conveyance—Act of Congress.**

A deed executed subsequent to the time the act of Congress approved May 27, 1908 (35 Stat. 312) became effective by an enrolled citizen of the Five Civilized Tribes, purporting to convey any part of the lands allotted to such citizen, who, if a male was at the time under the age of 21 years, and, if a female, under the age of 18 years, according to the enrollment records of the Commission to the Five Civilized Tribes, is for that reason void, and no title passes thereby.

**2. Indians—"Enrollment Record"—Contents —Act of Congress.**

"The enrollment record of the Commission to the Five Civilized Tribes," which section 3, Act Cong. May 27, 1908 (35 Stat. 312), declares "shall hereafter be conclusive evidence as to age" of any enrolled citizen of said tribes, embraces and includes all of the testimony and exhibits tending to establish age that were in evidence before the Commission and the conclusion of the Commission based thereon, from the date of application for enrollment of any particular individual up to the time of the ascertainment by the Commission as to whether the name of such person was entitled to be placed upon the rolls of the nation in which he claimed citizenship.

**3. Same—Birth Affidavit.**

A birth affidavit, executed and filed in May, 1901, subsequent to an application for enrollment as a Creek freedman and issuance of citizenship certificate, but prior to the transmission by the Commission to the Five Civilized Tribes of the schedule or partial roll containing the name of such citizen to the Secretary of the Interior for his approval, is held to be part of the enrollment record.

**4. Same—Enrolled Citizens—Age—Conclusion of Commission to Five Civilized Tribes.**

In the absence of special legislation, such as the act of May 27, 1908 (35 Stat. 312), the decision, finding, or conclusion of the Commission to the Five Civilized Tribes, as to the age of enrolled citizens, is without judicial or other conclusive effect.

**5. Same—Enrollment—Age—Act of Congress.**

The entire enrollment record, and not the conclusion or finding of the Commission to the Five Civilized Tribes based thereon, is by the act of Congress of May 27, 1908 (35 Stat. 312), made conclusive as to age in determining questions arising under the act.

**6. Same—Enrollment Record—Evidence.**

The enrollment records of the Commission to the Five Civilized Tribes pertaining to the age of Dora May Perryman, Creek freedmen roll No. 3974, examined, and held that, on March 18, 1911, she was according thereto under the age of 18 years.

Error from District Court, Muskogee County; Geo. C. Crump, Assigned Judge.

Action by Dora May Perryman against Ed. L. Rees and William Sharp. Judgment for plaintiff against defendant Rees, and in favor of defendant Sharp as against plaintiff, and defendant Rees and plaintiff each bring error. Reversed and remanded, with instructions.

Wm. T. Hutchings and Thea E. Lipscomb, for plaintiff in error Rees.

Dan M. Meredith, C. B. McCrory, and

Frank L. Montgomery, for plaintiff in error Perryman.

Grant Foreman and J. D. Simms, for defendant in error Sharp.

MILEY, J. In view of the conclusion we have reached thereon, it is necessary to consider but one question presented on this appeal. A deed executed by plaintiff below, Dora May Perryman, a duly enrolled Creek freedman, bearing date March 18, 1911, purporting to convey to Ed L. Rees her entire allotment as such Creek freedman, is assailed by her as invalid upon the ground, among others, that at the time of the execution and delivery of same she was, according to the enrollment records of the Commission to the Five Civilized Tribes, under the age of 18 years. The determination of this issue in her favor is decisive of the case and works a reversal of the judgment.

It is now well settled that a deed, executed subsequent to the time the act of Congress approved May 27, 1908 (35 Stat. 312, c. 199), became effective, by enrolled citizens of the Five Civilized Tribes, purporting to convey any part of the lands allotted such citizen who, if a male, was at the time under the age of 21 years, and, if a female, was under the age of 18 years, according to the enrollment records of the Commission to the Five Civilized Tribes, is for that reason void, and no title passes thereby. Sections 2, 3, 6, Act Cong. May 27, 1908 (35 Stat. 312); Jefferson v. Winkler, 26 Okla. 653, 110 Pac. 755; Bell v. Cook (C. C.) 192 Fed. 597.

The only question necessary to be determined is whether the plaintiff, Dora May Perryman, was according to such enrollment records under the age of 18 years at the date of the execution and delivery of the deed. The plaintiff introduced in evidence certified copies of a census card, birth affidavit, citizenship certificate, and that portion of the approved Creek rolls showing her enrollment, which were further certified by the superintendent in charge of the Five Civilized Tribes as the entire enrollment record on file in connection with the application of Dora May Perryman for enrollment as a citizen of the Creek Nation. The plaintiff also introduced in evidence certified copies of page 70 of the 1890 roll, and the portion of the 1895 pay roll pertaining to the Perryman family, of the Canadian Colored Town, Creek Nation. The defendants introduced in evidence a certified copy of letter, dated March 8, 1902, from the Commission to the Secretary of the Interior, transmitting partial roll of the Creek freedman for his approval, and also four certified copies of a census card, pertaining to the enrollment of the plaintiff.

It appears from the certified copy of census card No. 1036, field No. 1061, Creek Nation Freedmen Roll, introduced by plaintiff, that at the date of the application for her enrollment, in September, 1898, her age was stated as 9 years, and that she was enrolled on the 1890 Canadian Town Tribal Rolls at page 70. Her name is found on this census card opposite No. 9. The following pencil notation appears on the card:

"No. 9 is about 3 and No. 8 5 years old. Birth affidavits for No. 8, 9, and 12 are to be supplied. 3-S. May 11, 1901."

The card bears the further notation that the enrollment of those whose names appear thereon was approved by the Secretary of the Interior March 28, 1902. The birth affidavit appears to have been executed by Julia Perryman on May 16, 1901, in which she stated substantially that she was a citizen of the Creek Nation, the lawful wife of Douglas Perryman, also a citizen of the Nation, and that a female child was born to her on the 3d day of December, 1896, and that the child had been named Dora May Perryman, and was then living. The caption or indorsement of this affidavit is as follows:

"Creek Freedman Card 1061. In re application for enrollment of infant child Dora May Perryman as a citizen of the Creek Nation approved May 16, 1901. Tams Bixby, Acting Chairman, Commissioner."

The certified copy of the citizenship certificate shows that the same was issued June 1, 1899, by Tams Bixby, acting chairman, and recites among other things, that the name of Dora May Perryman, age 9, appears on freedman census card of the Creek Nation, field No. 1061, of record in the office of the Commission to the Five Civilized Tribes. The copy of the approved Creek Freedmen Roll shows the name of Dora May Perryman opposite No. 3974, age 9, sex F., card No. 1038. The name of Dora May Perryman does not appear upon the portion of the 1890 or 1895 tribal rolls introduced in evidence. However, the name of Mary Perryman does appear thereon, who, it was proven, was a sister of Dora May Perryman, and who died prior to April 1, 1899. The partial roll of Creek freedmen transmitted by the Commissioner to the Secretary of the Interior by the letter of March 8, 1902, for his approval, shows the name of Dora May Perryman opposit No. 3974, and it is stated thereon that she was on the 1890 and 1895 Canadian Town Roll, and also that she was the daughter of No. 3966 and 3967. The parties thus referred to appear elsewhere from this roll to be Douglas Perryman and Julia Perryman,

enrolled on the 1890 and 1895 rolls, and also on the Dunn roll. In this letter it is stated that the rolls transmitted contain the names of those—

"found either upon the rolls of the Creek freedmen made by J. W. Dunn, under authority of the United States prior to March 14, 1867, or who are descendants of persons who names are found on said rolls, born since said rolls were made, or are found upon the 1890 and 1895 authenticated Creek rolls, or who are descendants of persons whose names are found upon said rolls, born since said rolls were made."

The four copies of the census card, introduced in evidence by defendants, were all certified prior to the date of the certificate to the copy introduced in evidence by the plaintiff, and are substantially the same as that copy, except the pencil notation, bearing date May 11, 1901, did not appear upon the copies offered by defendants.

Although finding from this and other evidence in the record that at the date of the execution and delivery of the deed the allottee was, in fact, under the age of 18 years, the trial court concluded that according to the enrollment records she was over that age. In this conclusion, we think, the court erred. In support of the conclusion of the trial court the defendants argue that the birth affidavit does not constitute a part of the enrollment record and that the same should be respected in the determination of the age thereon. We think the affidavit is a part of that record. In Scott v. Brakel, 43 Okla. 655, 143 Pac. 510, which has been frequently followed, this court defined "the enrollment record of the Commission to the Five Civilized Tribes," which section 3 of the act of Congress approved May 27, 1908, declares "shall hereafter be conclusive evidence as to the age" of any enrolled citizen of said tribes, to embrace and include all of the testimony and exhibits tending to establish age that were in evidence before the Commission, and the conclusion of, the Commission based thereon, from the date of the application for enrollment of any particular individual up to the time of the ascertainment by the Commission as to whether the name of such person was entitled to be placed upon the roll of the nation in which he claimed citizenship.

Counsel concede that definition is correct, but argues that the citizenship certificate issued June 1, 1899, was the final determination by the Commission that Dora May Perryman was entitled to enrollment, and the affidavit made thereafter in May, 1901, and placed in the files was not a part of the testimony and exhibits upon which that de-

termination was based. With this contention we cannot agree. When approved by the Secretary of the Interior, the enrollment of any individual as a citizen becomes final. U. S. v. Wildcat, 244 U. S. 111, 37 Sup. Ct. 561, 61 L. Ed. 1024. Until such approval the Commission had the power to make investigation, hear testimony, and add to the list those found to be entitled to enrollment, or strike therefrom the names of those found not so entitled. There could be no final determination of the right of any person to enrollment in the Creek Nation prior to the time the original Creek Treaty (31 Stat. 861, c. 676), approved March 1, 1901, became effective, definitely fixing the date of April 1, 1899, as that on which a Creek citizen should be living in order to be placed upon the final rolls. There is nothing in the record to indicate that the Commission ascertained that Dora May Perryman was entitled to be placed on the final roll of citizens of the Creek Nation until her name was transmitted to the Secretary of the Interior with the list or schedule on March 8, 1902. The so-called birth affidavit was executed, filed, and approved by the acting chairman of the Commission prior to that time.

It is quite clear to us that the birth affidavit is a part of the enrollment records, as defined in Scott v. Brakel, supra. There was evidence of witnesses to the effect that they examined the original census card at and prior to the time this action was commenced, and that they did not observe the pencil notation of May 11, 1901, thereon. From this, in connection with the fact that a copy of the card prepared by the department for general public inspection and that the four copies put in evidence by defendants do not show this notation, it is urged that the same should not be considered as part of the enrollment record. However, in view of the fact, established by the evidence, that the notation is in the handwriting of a clerk of the Commission in charge of these cards at the time it purports to have been made, and that the writing had become very dim, so much so that two of the words were illegible, rendering it probable that the witness who examined the card, and the clerks preparing the copies, overlooked the same, we are convinced that the notation was made May 11, 1901, pursuant to information furnished at that time.

From the evidence of the manner in which these census cards were customarily made, we conclude that the notation made upon this card in September, 1908, that the allottee was then 9 years of age, was according to statements of witnesses made at the time,

which is the only thing in the enrollment record to support the conclusion that the allottee was over 18 years of age at the time the deed was executed. On the other hand, we have the notation made on the card in 1901 that she was then about 3 years old, the affidavit of the mother that she was born December 3, 1896, and the circumstances that her name did not appear on either the 1890 or 1895 tribal rolls, not conclusive, of course, but a strong circumstance indicating that she was not yet in being at the time these rolls were made, which would have been the case if she was 9 years of age in 1898. From this enrollment record we find no difficulty in calculating her age at the time the deed was executed as being but a few months and days over 14 years, and in concluding that the deed is therefore void.

The defendants call attention to a report of the Commission in 1904, in which they say, in referring to birth affidavits:

"Experience has shown that the statements of the affiants cannot be relied upon, and the testimony of two or more competent witnesses is required in each case."

From this they argue that the birth affidavit of the mother was not competent evidence under their rules, and was therefore not considered by the Commission. The answer to that argument is that the affidavit was received and approved by the acting chairman. Moreover, the report does not state that affidavits were required from two or more additional witnesses, but only their testimony. For aught that appears from the record, this testimony may have been given orally, and not presented in this case. The defendants further contend that the original recital on the census card, which was not changed after the birth affidavit was filed, the schedule transmitted to the Secretary of the Interior, and on the final rolls that the allottee was 9 years of age at the date of the application for enrollment in September, 1898, amounts to a finding and adjudication by the Commission as to age which is not now subject to collateral attack. In Scott v. Brakel, supra, this court held that such decisions as to age, in the absence of special legislation, such as the act of May 27, 1908, were without judicial or other conclusive effect. That act makes the enrollment record, not the decision or finding of the Commission, conclusive as to age. While the conclusion of the Commission is a part of the enrollment record, and should at all times be given very great weight as such, yet where, as in this case, that conclusion is palpably erroneous, the purpose of Congress in enacting this legislation and the

ends of justice must not be defeated by allowing that conclusion to overcome the fact otherwise appearing from the entire record. The same applies to the argument as to the conclusive effect on the question of age of the erroneous recital on the census card and the schedule transmitted to the Secretary of the Interior that Dora May Perryman was on the 1890 and 1895 rolls.

We fully realize the hardship of our decision, so far as it affects the defendant Sharp, who it appears is an innocent purchaser from Rees, and who has relied on certain incomplete copies of the enrollment record pertaining to the age of the allottee, furnished him by officials in charge of the records; but his remedy is not to keep that which under the law belongs to the plaintiff, but, if any he has, is against those who are responsible for his loss.

The judgment is reversed, and cause remanded, with instructions to proceed in accordance with the view herein expressed.

All the Justices concur.